WO                                                                          MDR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Michael Dewayne Outley, Jr.,                    No.   CV 21-00084-PHX-JAT (JFM)

               Plaintiff,

v.                                                              **ORDER**

David Shinn, et al.,

               Defendants.

On January 15, 2021, Plaintiff Michael Dewayne Outley, Jr., who is confined in CoreCivic's Red Rock Correctional Center (RRCC) in Eloy, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1), an Application to Proceed In Forma Pauperis (Doc. 2), and a Motion for Preliminary Injunction (Doc. 4).  The Court will grant the Application to Proceed, order Defendants Shinn and Stolc to answer Count One of the Complaint in their official capacities only, dismiss without prejudice Count Two and Defendants Fizer and Degard, and order Defendants Shinn and Stolc to respond to the Motion for Preliminary Injunction.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will assess an initial partial filing fee of $36.63.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.

TERMPSREF

28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.     Complaint**

In his two-count Complaint, Plaintiff names as Defendants Arizona Department of Corrections (ADC) Director David Shinn, RRCC Warden Bruno Stolc, and Assistant Wardens Greg Fizer and T. Degard.  In his Request for Relief, Plaintiff seeks monetary damages and injunctive relief.

In **Count One**, Plaintiff alleges ADC and RRCC's telephone policy is violating his First and Fourteenth Amendment rights.  (Doc. 1 at 3.)[1]  Plaintiff asserts that the telephone policy requires an inmate to submit a list of individuals the inmate wants to call; the individuals on the list must submit an application, "which is for a very intrusive[,] unreas[on]able background check to be completed"; a determination regarding the individuals is made between thirty to sixty days; and inmates are limited to the number of telephone calls per day they can make to the individuals on their list.  (*Id.*)  Plaintiff claims that due to the telephone policy, he was denied telephone access and was unable to make a single phone call for sixty days.  (*Id.*)

Plaintiff contends the telephone policy is an "exaggerated, irrational[,] arbitrary, [and] ambiguous, [and] serves no penological int[e]rest to the safety [and] security of [the] facilities." (*Id.*)  He also claims the daily limit on the number of telephone calls an inmate can make is "arbitrary [and] irrational [and] serves no penological int[e]rests."  (*Id.* at 4.)

Plaintiff alleges the policy has been established "for the sole purpose of suppressing [his] right to Intimate Association [and] freedom of speech," as opposed to any reasonably related and legitimate interest and, therefore, is "greater than 'necessary or essential'" and does not protect any "'important or substantial' int[e]rest." (*Id.* at 3.)  Plaintiff claims there are already other established safeguards to protect the community and the safety of the prison.  (*Id.* at 3-4.)  Specifically, he notes that in order to make a telephone call, he must

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

use a "set voice print" to enter his inmate number; all telephone numbers and telephone calls are recorded and monitored; and the person who is called must establish an account with ADC and RRCC's phone carrier, must accept each telephone call, and can block an inmate's telephone calls at any time.  (*Id*.)  Plaintiff also alleges the policy is "arbitrary [and] ambiguous" because under ADC and RRCC's mail policy, he can send mail to anyone he wants and can receive mail, subject to screening, from anyone; he contends the telephone policy is four times more restrictive than the mail policy.  (*Id*. at 5.)  He claims the telephone policy is invalid because the "'valid, rational connection' requirement is not satisfied" and because the other safeguards show there are "'obvious easy alternatives available,'" that are being applied and "fully accommodate[] Plaintiff's rights [and are] a 'de minim[i]s cost' to [Defendants'] valid penological int[e]rests."  (*Id*. at 6.)

Plaintiff also asserts he is being denied a "liberty int[e]rest" in "Intimate Association" because he does not have all of his family and friends' addresses, and, therefore, is completely barred from calling these individuals because he cannot send them the application required for him to be able to call them.  (*Id*. at 4.)  In addition, Plaintiff alleges he is being denied equal protection because he is a "new arrival inmate."  (*Id*.)  He asserts that inmates who previously have been incarcerated in ADC facilities can "instantly place telephone calls," make two free telephone calls because of funding from the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), and receive secure packages from previously approved individuals on their telephone list.  (*Id*.)  He asserts that because he is a new inmate, who does have an existing telephone list, he cannot take advantage of these opportunities.

Plaintiff alleges the telephone policy was created and/or approved by Defendants Shinn, Stolc, Fizer, and Degard.  (*Id*. at 5.)  He claims these Defendants are in the position to alter or implement policies at ADC and RRCC and are liable in their individual and official capacities for the "extended level of loneliness," depression, and deprivation of "vital social connections" Plaintiff has suffered from the policy.  (*Id*. at 6.)  Plaintiff asserts Defendants "know every well that these implemented policies [and] procedures," which

unduly burden and suppress his freedom of expression and his right to intimate association, are "unconstitutional absent a valid rational reason, yet continue to allow these contested policies to be applied." (*Id*. at 5.)  He also claims Defendant Shinn has not amended the telephone policy despite having first-hand knowledge, based on his prior experience in the Federal Bureau of Prisons, that the telephone policy violates Plaintiff's rights and "serves no purpose to enhance safety or security." (*Id*. at 6.)

In **Count Two**, Plaintiff alleges he is being denied his First, Sixth, and Fourteenth Amendment rights regarding access to the courts.  He contends that prior to his arrival at RRCC, he was actively involved in civil litigation regarding excessive force, a refusal to render medical aid, and an invasion of privacy.  (*Id*. at 7.)  He claims the litigation involves a "voluminous amount of photo[]s, video[]s, [and] audio evidence" that he had transported from the county jail to RRCC.  (*Id*.)

Plaintiff asserts that approximately a month after he arrived at RRCC, he went to "inmate property" to receive his legal property, but was denied access to the photographs. (*Id*.)  He also contends he "is being denied to review these photo[]s due to COVID-19 cohort implements policies of 'RRCC.'" (*Id*.)  Plaintiff claims that other than a handful of the photographs, the photographs are "'RRCC' approved items." (*Id*.)  He contends the photographs are "of crashed vehicles, parking lots [and] seized items plaintiff possessed at the time of [his] arrest." (*Id*. at 8.)  Plaintiff alleges that he has no objection to RRCC withholding photographs of weapons or drugs, but withholding photographs of "crashed vehicles [and] surrounding areas of the crash is irrational [and] arbitrary." (*Id*.)  He also asserts that he should have access to his video and audio evidence, alleging that because RRCC allows the use of compact disc players and allows inmates to access DVD players during religious services, allowing him to access a DVD player to view the evidence is "not unreasonable []or a threat to 'RRCC.'" (*Id*.)

Plaintiff contends Defendant Shinn creates and enforces policies regarding legal materials and is "responsible for plaintiff being deprived of the essential legal matters needed for plaintiff to litigate." (*Id*.)  He claims "[t]his issue has been put forth to

[Defendant] Shinn[,] who[] has denied to address this issue when [he] is in direct authority to alter or amend [the] policies in connection to legal materials." (*Id.*)  Plaintiff asserts Defendant Stolc is responsible for Plaintiff "being frustrated [and] impeded [and] has direct knowledge of the herein raised issues [and] has the authority to alter or amend [RRCC's] policies[,] yet has refused to address plaintiff's issues." (*Id.*)  Similarly, Plaintiff claims Defendants Fizer and Degard are aware of RRCC's legal materials policies and have the authority to alter or amend them, but Defendant Fizer has "refused to address these issues" and Defendant Degard "has not attempted to correct or remedy these issues." (*Id.*)

Plaintiff claims there is no way for him to attach the photographs to any motions, his Rule 26 report, or his anticipated motion for summary judgment and "summary judgment opposition." (*Id.* at 7-8.)  He also asserts that "having to attempt to go through all these unnecessary steps to view video/audio evidence is frustrating [and] impeding [him] from preparing for his litigation." (*Id.* at 8.)

**IV.   Discussion**

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. at 165.  That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.*  To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a

civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

### A.    Count One

Although Plaintiff has named Defendants in both their individual and official capacities, Plaintiff's allegations fail to plausibly show that any Defendant was personally involved in the deprivation of his civil rights, but rather their involvement stems solely from their roles as the heads of the entities they oversee.  Accordingly, the Court will construe Plaintiff's claims in Count One as directed against Defendants in their *official* capacities only, and evaluate them accordingly.

### 1.    First Amendment Claim - Defendant Shinn

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Plaintiff cannot maintain a lawsuit for damages against Defendant Shinn in his official capacity.  *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983.  Likewise[,] 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Plaintiff may maintain a lawsuit against Defendant Shinn in his official capacity for *prospective* declaratory and injunctive relief.  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (the Eleventh Amendment "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law").  Liberally construed, Plaintiff has stated a First Amendment claim regarding ADC's telephone policy.  The Court will require

Defendant Shinn, in his official capacity only, to answer the First Amendment claim in Count One.

### 2.    First Amendment Claim – Defendants Stolc, Fizer, and Degard

A claim against an individual in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55.  To state a claim under § 1983 against a private entity performing a traditional public function, such as housing prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.  *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam).  A plaintiff must allege the specific policy or custom and how it violated his constitutional rights.  A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights.  *See Tsao*, 698 F.3d at 1139; *Buckner*, 116 F.3d at 452.

Liberally construed, Plaintiff has stated a First Amendment claim regarding RRCC's telephone policy.  The Court will require Defendant Stolc, in his official capacity only, to answer the First Amendment claim, and will dismiss as duplicative Plaintiff's First Amendment claim against Defendants Fizer and Degard in their official capacities.

### 3.    Fourteenth Amendment Claims

To the extent Plaintiff is alleging a substantive due process claim based on the telephone policy, the Court will dismiss that claim.  *See Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998))).

To the extent Plaintiff is raising an equal protection claim, the Court will dismiss that claim.  Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause

. . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren*, 152 F.3d at 1194.  Plaintiff has not alleged he is a member of a protected class, and being a first-time offender rather than a repeat offender is not a protected class.  The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).  Even under this standard, Plaintiff has failed to state a claim.  Plaintiff has failed to allege that he was treated differently than other similarly situated individuals and that there was no rational basis for treating him differently.

**B.   Count Two**

The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996).   "[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials."   *Silva v. DiVittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (emphasis in original), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

As a matter of standing for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury"—i.e., "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation omitted); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'") (citations omitted); *cf. Silva*, 658 F.3d at 1104 (actual injury alleged where plaintiff claimed pending lawsuits had been dismissed as the result of defendants' actions).

1      However, "the injury requirement is not satisfied by just any type of frustrated legal

2   claim." *Id*. at 354.  The right of access to the courts "does not guarantee inmates the

3   wherewithal to transform themselves into litigating engines capable of filing everything

4   from shareholder derivative actions to slip-and-fall claims." *Id*. at 355.  The nonfrivolous

5   claim must be a direct or collateral attack on the inmate's sentence or a challenge to the

6   conditions of his confinement.  *Id*.  "Impairment of any *other* litigating capacity is simply

7   one of the incidental (and perfectly constitutional) consequences of conviction and

8   incarceration." *Id*. (emphasis in original).

9      Plaintiff has failed to identify what the legal materials policy is or how it is

10   preventing him from accessing his legal materials.  In addition, Plaintiff has failed to

11   identify how or when the issue regarding his legal materials was "put forth" to Defendant

12   Shinn or how Defendant Stolc obtained "direct knowledge" of this issue.  Likewise, he

13   does not allege what Defendant Shinn said or did when he "denied to address this issue"

14   or what Defendant Stolc said or did when he "refused to address" the issue.  Similarly,

15   Plaintiff has failed to identify when he presented the issue regarding his legal materials to

16   Defendants Fizer and Degard, what information he provided to each Defendant, what

17   Defendant Fizer said or did when he "refused to address these issues," and what response,

18   if any, Defendant Degard gave when presented with information about Plaintiff's legal

19   materials.  Absent more, Plaintiff's allegations are too vague and conclusory to state an

20   official or individual capacity claim against any Defendant.  Thus, the Court will dismiss

21   without prejudice Count Two.[2]

22   . . . .

23   . . . .

24   . . . .

25   

---

26   [2] The Court notes, moreover, that Plaintiff's access to his legal materials is currently
    being litigated in *Outley v. Moir*, CV 19-00019-PHX-JAT (JFM) (D. Ariz.).  Currently
27   pending in that lawsuit are Plaintiff's Motion for Preliminary Injunction (Doc. 69 in CV 19-
    00019), based on ADC and RRCC's "irrational [and] arbitrary denial of Plaintiff's right to
28   posses[s] legal photo[]s[,] which is very vital to Plaintiff's ability to litigate the instant
    litigation," and Plaintiff's Motion for a Protective Order (Doc. 71 in CV 19-00019) seeking
    access to his photographs, his audio and video compact discs, and a DVD player.

**V.     Motion for Preliminary Injunction**

In his Motion for Preliminary Injunction, Plaintiff seeks injunctive relief relating to the issue raised in Count One.  The Court will require Defendants Shinn and Stolc to file a response to the Motion for Preliminary Injunction.

**VI.    Warnings**

      **A.     Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

      **B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

      **C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

      **D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

. . . .

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $36.63.

(3)     Count Two and Defendants Fizer and Degard are **dismissed** without prejudice.

(4)     Defendants Shinn and Stolc must answer the First Amendment claim in Count One in their official capacities only.

(5)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), the Motion for Preliminary Injunction (Doc. 4), this Order, and both summons and request for waiver forms for Defendants Shinn and Stolc.

(6)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8)     The United States Marshal must retain the Summons, a copy of the Complaint and the Motion for Preliminary Injunction, and a copy of this Order for future use.

(9)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

. . . .

(10)   A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(11)   The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, Complaint, the Motion for Preliminary Injunction, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, the Motion for Preliminary Injunction, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12)   Defendants Shinn and Stolc, in their official capacities, must answer the First Amendment claim in Count One of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13)   Within **21 days** of being served with the Complaint and Motion for Preliminary Injunction, Defendants Shinn and Stolc must file a **response** to the Motion for Preliminary Injunction.  Plaintiff may file a **reply** within **10 days** of Defendants' response.

(14)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 5th day of February, 2021.

James A. Teilborg
Senior United States District Judge